**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------------- X

R.A., a minor, by her parent and natural guardian JOSEPH ABDALLAH,

Plaintiff,

- against -

CITY OF NEW YORK; NYPD Detective Adrian Johnson (Shield No. 2413); NYPD Detective Angel Cedeno (Shield No. 1938); NYPD Officer Jessica Cavallo, (Shield No. 20927) and NYPD Officers John and/or Jane Does # 2, 3, etc.,

Defendants.

----------------------------------------------------------------------- X

Civil Case No. 25-cv-982 (ER)

**FIRST AMENDED COMPLAINT AND JURY DEMAND**

Plaintiff R.A., a minor, by her parent and natural guardian, JOSEPH ABDALLAH, by and through her attorneys, Beldock Levine & Hoffman LLP, the Aboushi Law Firm PLLC, and the Council on American-Islamic Relations, New York (CAIR-NY), as and for their Complaint, allege as follows:

## PRELIMINARY STATEMENT

1. According to the tenets of their Muslim faith, many Muslim women, including R.A., believe they are required to wear headscarves, known as hijabs, in front of any man who is not their immediate family member. To decide to wear the hijab is a lifelong decision, and a woman's hijab becomes a part of her.

2. Pursuant to a So-Ordered Stipulation of Settlement entered on November 5, 2020, the New York City Police Department ("NYPD") enacted a policy in its Patrol Guide ("P.G.") to

govern the removal of religious coverings during post-arrest processing.[1] Pursuant to the policy, a person wearing a religious head covering must be informed that it must be temporarily removed and searched in private by a member of service of the same gender. P.G. 208-83 at 1. The Policy also dictates the religious head covering is not to be removed unless (a) [t]here is reasonable suspicion that the arrestee has a distinguishing feature not otherwise fully visible with head covering in place . . . that is of investigative value to the current investigation or arrest, or (b) [t]here is reasonable suspicion that the arrestee committed the crime outside their residence while not wearing a head covering." *Id*. at 2. In the rare cases when an officer may be permitted under the policy to require removal or retention of a religious head covering for safekeeping or evidence, the policy requires the NYPD desk officer to provide a replacement head covering to the prisoner. *Id*. The policy also requires documentation through a Command Log entry of any reason for removal and retention of a religious head covering, and an entry if removal was disapproved.

3. In a glaringly direct contravention of its policy, the NYPD forced fourteen-year-old R.A. to remove her hijab and sit handcuffed and exposed for several hours—visible to men who were not in her immediate family—until she was released from custody.

4. R.A.'s first exposure to law enforcement and the legal system left her feeling targeted, violated, and humiliated.

## JURISDICTION

5. Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331.

6. This action arises, in part, under the Religious Land Use and Institutionalized Person Act, 42 U.S.C. §2000cc *et seq.*, and the First, Fourth, and Fourteenth Amendments to the

---

[1] *Elsayed et al., v City of New York et al.*, No. 18-cv-10566 (AT)(KHP), (S.D.N.Y.), Dkt. No. 78; NYPD - Public Patrol Guide Section 208-83 Arrests – Religious Head Covering Guidelines – last accessed 12/19/2024, https://www.nyc.gov/assets/nypd/downloads/pdf/public_information/public-pguide1.pdf

United States Constitution.

7. Supplemental jurisdiction is conferred upon this Court by 28 U.S.C. § 1367 over any and all state law claims that are so related to the federal claims that they form part of the same case or controversy.

**VENUE**

8. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(1) as at least one of the Defendants resides in this district and, upon information and belief, all Defendants are residents of the State of New York.

**PARTIES**

9. Plaintiff R.A. ("Plaintiff" and/or "R.A.") is a resident of the City of New York, County of Richmond, and State of New York. She is a Muslim and observes hijab.

10. Joseph Abdallah ("Mr. Abdallah") is a resident of the resident of the City of New York, County of Richmond, and State of New York.

11. Joseph Abdallah is the parent and natural guardian of R.A.

12. Defendant City of New York (the "City") is a municipal entity created and authorized under the laws of the State of New York. The City is authorized by law to maintain a police department, and does maintain the New York Police Department ("NYPD"), which acts as its agent in the area of law enforcement and for which it is ultimately responsible. The City assumes the risks incidental to the maintenance of a police force and the employment of police officers.

13. NYPD Detective Adrian Johnson (Shield No. 2413) at all times relevant hereto, is a male Detective with the New York Police Department ("the NYPD"), acting in the capacity of agent, servant, and employee of the City of New York, and within the scope of his employment. He is sued in his individual and official capacities.

14. NYPD Detective Angel Cedeno (Shield No. 1938) at all times relevant hereto, is a male Detective with the NYPD, acting in the capacity of agent, servant, and employee of the City of New York, and within the scope of his employment. He is sued in his individual and official capacities.

15. NYPD Officer Jessica Cavallo, (Shield No. 20927) at all times relevant hereto, is a female police officer with the NYPD, acting in the capacity of agent, servant, and employee of the City of New York, and within the scope of her employment. She is sued in her individual and official capacities.

16. NYPD Officers John and/or Jane Does #2, 3, etc., at all times relevant hereto, are NYPD Police Officers acting in the capacity of agent, servant, and employee of the City of New York, and within the scope of their employment. They are sued in their individual and official capacities.

17. At all times relevant herein, Defendants Johnson, Cedeno, Cavallo and NYPD Officers John and/or Jane Does #2, 3, etc. (the "Individual Defendants") have acted under color of state law in the course and scope of their duties and/or functions as agents, employees, and/or officers of the City and/or the NYPD, and incidental to the lawful pursuit of their duties as agents, employees, and/or officers of the City and/or the NYPD.

**COMPLIANCE WITH NEW YORK GENERAL MUNICIPAL LAW**

18. Mr. Abdallah, as guardian for R.A., timely served a Notice of Claim on behalf of R.A. upon the City of New York by e-filing same with the Comptroller's Office on February 1, 2024, within ninety days of the events giving rise to R.A.'s claims.

19. Plaintiff R.A. and Mr. Abdallah attended a hearing pursuant to section 50-h of the New York General Municipal Law on January 21, 2025.

20. More than thirty days have elapsed since Plaintiff served a Notice of Claim and the City has not offered adjustment or payment thereof.

## JURY DEMAND

21. Plaintiff demands a trial by jury in this action on each and every one of the claims for which a jury trial is legally available.

## STATEMENT OF FACTS

22. Joseph Abdallah and his daughter, Plaintiff R.A., are Muslim.

23. In November of 2023, R.A. was fourteen years old and in ninth grade.

24. R.A. enjoys running track, listening to music, and hanging out with friends.

25. R.A. wears a religious a headscarf that covers her ears, hair, and neck, but not her face—as an expression of her sincerely held religious beliefs to maintain *hijab*. The Arabic word *hijab* (literally translated as "barrier" and derived from the root word, *hajaba*, meaning to screen or cover from view) is an Islamic practice that encompasses modest dress, behavior, and demeanor. *Hijab* is commonly represented by a headscarf that Muslim women wear as an expression of faith, dignity, and obedience to God.

26. R.A.'s beliefs with respect to the headscarf are grounded in the teachings of the Holy Qur'an, the holy scripture of Islam. The Qur'an is believed by Muslims to be the literal word of God. Additionally, R.A. follows the teachings and tradition of the Prophet Muhammad (S.A.W.S.), as transmitted through Hadith, oral traditions carried down from the time of the Prophet Muhammad (S.A.W.S.).[2]

[2] The phrase "S.A.W.S." is shorthand for "Sallallahu 'Alayi Wa Salam," an Arabic phrase that translates to "God's blessings and peace be upon him" which is used to express love and respect for the Prophet when invoking his name.

27. For example, the Holy Qur'an prescribes: "O believers, enter not the dwellings of the Prophet, unless invited . . . And when you ask of his wives anything, ask from behind a *hijab*. That is purer for your hearts and for their hearts." (Translation of Surat Al-Ahzab 33:53.)

28. According to one Hadith, when a Qur'anic command was revealed in relation to women's veils, the Muslim women tore their garments and veiled their heads with them." (Sahih al-Bukhari 4758).

29. To an observant Muslim, like R.A., the veil becomes inextricably part of herself: a reflection of her dignity and an expression of her religious observance and identity. To force R.A., as the City did, to be without her headscarf in the presence of men not from her immediate family is to violate her autonomy and religious beliefs, in particular the right to practice *hijab*. The City's disrespectful conduct towards R.A. not only violated her freedom of religious expression but humiliated R.A. and undermined her dignity.

**_*Clark*_ and _*Elsayed*_ Suits**

30. On March 16, 2018, a putative class action suit on behalf of individuals who were (a) arrested by or in the custody of the NYPD (b) required to take a post-arrest Booking Photograph while in any NYPD facility; and [(c)] forced to remove any religious head covering for that Booking Photograph pursuant to the Photograph Policy or any other written or unwritten policy of the NYPD." *Clark et al. v. City of New York et al.*, No. 18-cv-2334 (AT)(KHP), (S.D.N.Y.), Dkt. No. 1 at ¶ 69. The *Clark* Complaint in its entirety is incorporated by reference and attached hereto as Exhibit 1.

31. On November 13, 2018, another putative class action suit—filed by Plaintiff's counsel—was also filed on behalf "all persons who have been or will be subjected to the NYPD's policy, practice, and/or custom of removing or forcing removal of Muslim women's hijab's worn

as an expression of and adherence to their sincerely held religious beliefs." *Elsayed et al., v City of New York et al.*, No. 18-cv-10566 (AT)(KHP), (S.D.N.Y.), Dkt. No. 1 at ¶ 137. The *Elsayed* Complaint in its entirety is incorporated by reference and attached hereto as Exhibit 2.

32. The injunctive and policy-related claims in the *Clark* and *Elsayed* matters were resolved by a So-Ordered Stipulation of Settlement (hereinafter the "Stipulation"). *Elsayed* Dkt. No. 78, incorporated by reference and attached hereto as Exhibit 3.

33. As part of the Stipulation, the *Clark* and *Elsayed* Plaintiffs, the City of New York and NYPD agreed to implement a jointly drafted NYPD Patrol Guide ("P.G.") Section 208-83.

34. P.G. 208-83 provides, *inter alia*, that following removal of a religious head covering to conduct a search incident to an arrest, a religious head covering is not to be retained for safekeeping unless "there is an articulable reason, based on articulable facts then known to the arresting officer, to believe it is likely to be dangerous to life, can be used to harm self, or can be used to harm others." P.G. 208-83 at 4.a.

35. The Precinct Desk Officer must give permission for removal and retention of a religious head covering, must provide a temporary head covering to the arrestee, and must make a Command Log entry "indicating the reason(s) for removal and retention." *Id*. at 4.b.-7.

36. P.G. 208-83 also provides the policy for taking booking photographs. It provides that "if an uncovered photograph must be taken, the prisoner MUST be transported to the appropriate borough court section…Uncovered photographs will NOT be taken at the command of arrest." P.G. 208-83 at Page 2 of 4, second Note. (emphasis in original).

37. P.G. 208-83 further provides that "an uncovered photograph will NOT be taken unless a. there is reasonable suspicion that the arrestee has a distinguishing feature not otherwise fully visible with head covering in place…or b. there is reasonable suspicion that the arrestee

committed the crime outside their residence while not wearing a head covering." *Id*. (emphasis in original).

38. When an uncovered photograph must be taken, it must be taken in a private area by a member of service of the same gender as the arrestee. *Id*.

39. When an uncovered photograph must be taken, the digital version of that photograph is tagged to specifically restrict the viewing of the uncovered photograph to certain individuals and limiting the permissible uses of the photograph. *Id*.

40. P.G. 208-83 was in effect when R.A. was arrested and remains in effect as of the date of this Complaint.

**Experience of R.A.**

41. On November 6, 2023, R.A. was a fourteen-year-old ninth grade high school student on her way home from school.

42. R.A. was wearing her religious headscarf the entire time she was on the way home.

43. At one point, R.A. had an emotional reaction to a banner she saw and scratched the banner. She then got back on the bus home.

44. Two adult men stalked 14-year old R.A. home.

45. A few hours later, two NYPD Detectives, Defendants Johnson and Cedeno, appeared at R.A.'s home.

46. The Individual Defendants presented Mr. Abdallah with a photograph of R.A. on one of their phones.

47. Without reading R.A. her rights, and without an attorney present, the Individual Defendants questioned R.A. in front of her whole family, including her father Mr. Abdallah, her mother, sister, and brother.

48. Upon information and belief, any damage caused to the banner was of minor value, and certainly much less than two hundred fifty dollars.

49. Defendant Johnson and Cedeno handcuffed R.A. and took her to the 121st Precinct.

50. While at the precinct, R.A. was placed in a room which was visible to others in the precinct through a transparent window in the door.

51. This was R.A.'s first meaningful encounter with law enforcement or the justice system, and she was alone and terrified.

52. While in the room with a transparent window in the door facing the interior of the precinct, Defendant NYPD Officer Jessica Cavallo told R.A. that she needed to remove her hijab.

53. Defendant NYPD Officer Jessica Cavallo did not ask R.A. if her head covering was worn because of a religious belief.

54. Without a legal basis or justification for doing so, Defendant NYPD Officer Jessica Cavallo put her hands on R.A.'s head, while R.A. was handcuffed, and removed R.A.'s religious headscarf— leaving R.A.'s hair, ears, and neck humiliatingly exposed to any men passing by the window.

55. Once Defendant NYPD Officer Jessica Cavallo concluded her search, R.A. asked for her headscarf back.

56. Defendant NYPD Officer Jessica Cavallo refused to return R.A.'s headscarf.

57. R.A. was frozen with fear, humiliation and helplessness as she felt, and indeed was, exposed to any man in the precinct who could see her through the window.

58. R.A. presented no indication that she was a safety risk to herself or others. Recognizing this, no officer took R.A.'s shoelaces for safekeeping.

59. There was no need for R.A.'s hijab to be removed for safekeeping or evidence in relation to the arrest or for any other reason.

60. R.A. was not provided a temporary or replacement head covering as required by P.G. 208-83.

61. R.A. sat in the room with the window in the door without her religious headscarf, exposed for four to five hours while any man who walked by the room could see her.

62. R.A. was handcuffed to a bench in the room.

63. On at least two occasions, R.A. was moved out of the room with the window and taken into the main area of the precinct.

64. On each of those occasions, R.A. was without her religious headscarf.

65. Without her headscarf, R.A. was taken through the precinct main area and her fingerprints and photograph were taken.

66. Defendant Detective Johnson took R.A.'s photograph while she was not wearing her religious headscarf.

67. The area where Defendant Detective Johnson took her photograph was not private and was in full view of men who were being held in nearby cells.

68. On another occasion, Defendants Johnson and Cedeno entered the room, clearly able to observe R.A. without her religious headscarf, and took her to another room where Mr. Abdallah was waiting.

69. R.A. was taken from the first room through the precinct without her religious headscarf.

70. Mr. Abdallah sat with his daughter—while she was without her headscarf—in front of Defendant Johnson and Cedeno until they informed her that she was going to be charged with criminal mischief in the third degree and a hate crime.

71. Defendants Johnson and Cedeno had no basis to charge R.A. with a felony.

72. While R.A. admitted to scratching the banner, she was not motivated by anyone's race, color, national origin, ancestry, religious practice or other protected status, and did not even damage the banner in an amount that would warrant her criminal charge.

73. Based on information provided by a complaining witness, the value of the banner itself did not exceed two hundred fifty dollars.

74. After approximately six hours in custody, R.A. was released to her father and her headscarf was returned to her.

75. At approximately 11:30 p.m., R.A. received a family court appearance ticket with a charge of Penal Law section 145.05H Criminal Mischief in the 3rd Degree.

76. R.A. and Mr. Abdallah were instructed to call a number on the ticket, which they did, reaching the New York City Department of Probation.

77. R.A. successfully completed a juvenile adjustment program under the Family Court Act with the Department of Probation and the charges against her were sealed on January 3, 2024.

78. R.A. has been traumatized by her first and only experience with law enforcement.

## FEDERAL CLAIMS

### FIRST CAUSE OF ACTION
**(For Violations of Religious Freedoms Under the First and Fourteenth Amendments Pursuant to 42 U.S.C. § 1983)**
*Against the Individual Defendants*

79. Plaintiff repeats and realleges each and every allegation made in the foregoing paragraphs as if fully set forth herein.

80. The Defendants' conduct alleged above targeted R.A.'s religious exercise and violated her constitutional rights to the free exercise of religion.

81. Defendants' removal of R.A.'s religious headscarf and improper application of the City's Religious Head Covering Arrest Policy P.G. 208-83 violated R.A.'s free exercise of religion, in violation of the First and Fourteenth Amendments of the United States Constitution.

82. The Defendants have acted with deliberate indifference to R.A.'s constitutional rights. As a direct and proximate result of the acts and omissions of the Defendants, the constitutional rights of Plaintiff have been violated.

83. By acting under color of state law to deprive Plaintiff of her rights under the First and Fourteenth Amendments, the Defendants are in violation of 42 U.S.C. § 1983, which prohibits the deprivation under color of state law of rights secured under the United States Constitution.

84. As a direct and proximate result, Plaintiff has suffered injuries and damages set forth above.

85. The Defendants' unlawful conduct was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

86. As a result of Defendants' violations of R.A.'s clearly established rights under the First and Fourteenth Amendments, R.A. suffered grievous and continuing damages and injuries set forth herein.

**SECOND CAUSE OF ACTION**
**Religious Land Use and Institutionalized Person Act**
**(42 U.S.C. § 2000cc *et seq.*)**
*Against the Individual Defendants*

87. Plaintiff realleges and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

88. R.A.'s donning of the headscarf comprising her *hijab* is a sincerely held religious belief.

89. R.A. "resid[ed] in or [was] confined to an institution" pursuant to RLUIPA.

90. The City meets the definition of "government" pursuant to RLUIPA.

91. To comply with this religious belief, R.A. wears a religious headscarf whenever she may be in the presence of unauthorized men.

92. R.A. sincerely believes that removing the headscarf in the presence of unauthorized men is morally wrong and a violation of her religious convictions.

93. By forcing R.A. to remove her headscarf at the time of her arrest, the Defendants substantially burdened her religious beliefs.

94. By forcing R.A. to remove her headscarf in the presence of unauthorized men for her photograph at the precinct, Defendants substantially burdened her religious beliefs.

95. The Defendants had no compelling interest in removing R.A.'s religious headscarf at the time of her arrest.

96. Defendants had no compelling interest in forcibly removing R.A.'s headscarf in the presence of unauthorized men for their photograph at the precinct.

97. Defendants had less restrictive means of satisfying any compelling interests they may have with respect to securing and utilizing R.A.'s photographs.

98. Defendants failed to reasonably accommodate Plaintiff in failing to provide her with a temporary replacement head covering or providing a private place for her head covering to be searched.

99. Defendants' treatment of Plaintiff violates rights secured by RLUIPA.

**<u>THIRD CAUSE OF ACTION</u>**
**42 U.S.C. § 1983, United States Constitution Amendments IV and XIV**

**Malicious Prosecution**
*Against the Individual Defendants*

100. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

101. Defendants Johnson and Cedeno with malice and knowing that probable cause did not exist to prosecute R.A. for PL 145.05 02H Hate Crime/Criminal Mischief in the Third Degree, acting individually and in concert caused her to be charged and prosecuted for that crime, thereby violating her clearly established right, under the Fourth and Fourteenth Amendments of the United States Constitution, to be free of unreasonable searches and seizures.

102. Defendants Johnson and Cedeno, acting in concert with one another and/or others, continued and caused the continuation of criminal proceedings against R.A.

103. Defendants Johnson and Cedeno intentionally withheld from and misrepresented to prosecutors and the Department of Probation facts that vitiated probable cause against R.A., including but not limited to the failure of R.A.'s conduct to meet the elements of the crime for which she was accused, including that the property at issue was not more than $250 or that R.A. had any intent sufficient to charge her with a Hate Crime.

104. Defendants Johnson and Cedeno performed the above-described acts under color of state law intentionally, with reckless disregard for the truth, and with deliberate indifference to R.A.'s clearly established constitutional rights. No reasonable officer at the time would have believed this conduct was lawful.

105. As a direct and proximate result of Defendant's actions, R.A. accepted an adjustment services plan in family court which she successfully completed and the records of which are sealed.

106. As a direct and proximate result of Defendant's conduct, R.A. suffered grievous and continuing damages and injuries set forth herein.

## STATE CLAIMS

## FOURTH CAUSE OF ACTION
**Malicious Prosecution**

107. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

108. Defendants Johnson and Cedeno, despite not having probable cause to initiate the prosecution against R.A. for PL 145.05 02H Hate Crime/Criminal Mischief in the Third Degree, intentionally, recklessly, and with malice caused R.A. to be prosecuted for those crimes.

109. An element of Criminal Mischief in the third degree is that the allegedly damaged property of another person exceeds two hundred fifty dollars. The banner at issue here was not valued at more than $250.

110. R.A. is completely innocent of the charges against her.

111. R.A.'s case was not immediately dismissed even though Defendants had evidence of R.A.'s innocence.

112. The prosecution finally terminated in R.A.'s favor on January 3, 2024, when the charges against her were adjusted and sealed.

113. As a direct and proximate result of these Defendants' actions, R.A. was charged with a felony and suffered the other grievous and continuing damages and injuries set forth above.

114. The Individual Defendants were, at all times relevant to this cause of action, employees and agents of either the City of New York. Each of those defendants and persons was acting within the scope of his or her employment, and their acts and omissions, as alleged above,

are therefore directly chargeable to the City of New York under the state law doctrine of *respondeat superior.*

## FIFTH CAUSE OF ACTION
**Intentional, Reckless and/or Negligent Infliction of Emotional Distress**

115. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

116. The aforementioned removal of Plaintiff's religious head covering was extreme and outrageous, and exceeded all reasonable bounds of decency and essentially amounted to a strip search.

117. Defendants had notice of the deep, personal significance of Plaintiff's religious head covering by and through their training as employees of the Defendant City of New York and the NYPD.

118. Defendants, including employees, servants and/or agents of Defendant City of New York, while acting within the scope and in furtherance of their employment committed the aforementioned conduct.

119. The aforementioned conduct was unnecessary, intentional, reckless, and/or negligent and done for the sole purpose of causing severe emotional distress to Plaintiff.

120. As a result of the aforementioned conduct, Plaintiff suffered severe emotional distress, physical and mental injury, together with embarrassment, humiliation, shock, fright and loss of freedom.

121. The Individual Defendants, were, at all times relevant to this cause of action, employees and agents of either the City of New York. Each of those defendants and persons was acting within the scope of his or her employment, and their acts and omissions, as alleged above,

are therefore directly chargeable to the City of New York under the state law doctrine of *respondeat superior.*

**SIXTH CAUSE OF ACTION**
**New York State Constitution, Article I § 3**

122. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

123. Article 1 § 3 of the Constitution of the State of New York provided that: "The free exercise and enjoyment of religious profession and worship, without discrimination or preference, shall forever be allowed in this state to all humankind."

124. Defendants' forcible removal of Plaintiff's religious head covering violated Article I § 3 by impeding the free exercise of her religion.

125. As a result of the aforementioned conduct, Plaintiff suffered damages, including severe emotional distress, physical and mental injury, together with embarrassment, humiliation, shock, fright and loss of freedom.

**SEVENTH CAUSE OF ACTION**
**Unlawful Discrimination in Violation of**
**NYSHRL (N.Y. Exec. Law § 296) and NYCHRL (N.Y.C. Admin. Code § 8-107)**

126. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

127. The NYPD is a place or provider of public accommodation because it provides services, facilities, accommodations, advantages and privileges through and including, but not limited to, its post-arrest processing.

128. The New York State Division of Human Rights has not granted the NYPD an exemption to § 296.

129. The New York City Commission on Human Rights has not granted the NYPD an exemption to § 8-107.

130. By sanctioning and/or engaging in the improper removal of R.A.'s religious head covering, failing to provide a temporary head covering upon removal, and/or by aiding, abetting, inciting or compelling such conduct, Defendants have refused, denied and withheld from Plaintiff the accommodations, advantages, facilities and privileges of the NYPD's post-arrest and custodial services. Therefore, the acts of Defendants, who are owners, proprietors, managers, superintendents, agents and/or employees of the NYPD and the City, violated Plaintiff's rights under the NYSHRL, N.Y. Exec. Law § 296 and NYCHRL § 8-107.

131. Plaintiff has not filed a complaint with the New York City Commission on Human Rights, the State Division on Human Rights, any other court of competent jurisdiction, or any other administrative agency based upon the unlawful discriminatory practices alleged herein.

132. Defendants' violations of Plaintiffs' rights under the NYHRL and NYCHRL are the actual, direct and proximate cause of injuries suffered by Plaintiff.

133. As a result of Defendants' actions, Plaintiff has suffered the injuries and damages set forth above.

**WHEREFORE**, Plaintiff demands the following relief against the Defendants:

a. A declaration that Defendants' conduct in removing Plaintiff R.A.'s religious headscarf during arrest processing violated her constitutional right to practice her religion freely;

b. Award Plaintiff compensatory and punitive damages in an amount that is fair, just and reasonable, to be determined at trial;

c. Award Plaintiff reasonable attorneys' fees and costs; and

d. Grant such other and further relief as this Court may deem appropriate and equitable, including injunctive and declaratory relief as may be required in the interests of justice.

Dated: August 31, 2025
New York, New York

**BELDOCK LEVINE & HOFFMAN LLP**

By: ______________________
Luna Droubi, Esq.
Tala Alfoqaha
99 Park Avenue, PH/26th Floor
New York, New York 10016
t: (212) 490-0400
e: ldroubi@blhny.com
dazizi@blhny.com
marena@blhny.com

**CAIR-NY**

By: /s/ Lamya Agarwala
Lamya Agarwala, Esq.
Brendan "Burhan" Carroll, Esq.*
*application for admission forthcoming*
80 Broad St. 5th Floor
New York, NY 10004
T: (646) 664-7599
E: legal@ny.cair.com

**THE ABOUSHI LAW FIRM PLLC**

By: /s/ Tahanie Aboushi
Tahanie A. Aboushi, Esq.
1441 Broadway Fifth Floor
New York, New York 10018
Telephone: (212) 391-8500

*Attorneys for Plaintiff*